In the Matter of the Arbitration Between James Shoemaker and the City of Scranton. City of Scranton, Appellant.

142

Argued March 5, 1981, before Judges MENCER, MacPHAIL and PALLADINO, sitting as a panel of three.

*Peter P. Tayoun*, with him *John J. Brazil*, City Solicitor, and *James A. Doherty, Jr.*, Assistant City Solicitor, for appellant.

*Sheldon Rosenberg*, with him *Nancy Abrams*, *Rosenberg & Ufberg*, for appellee.

OPINION BY JUDGE MacPHAIL, May 4, 1981:

The City of Scranton (Scranton) appeals here from an order of the Court of Common Pleas of Lackawanna County dated April 25, 1980 that denied Scranton's appeal and application for review of an arbitration award and confirmed the award in favor of James Shoemaker (Shoemaker), the appellee. The

award held that Shoemaker, a police officer, had been improperly removed from his post on the "K" Squad and ordered his restoration to the "K" Squad.

Shoemaker had been a uniformed police officer in the Scranton Police Department until 1972, when he became a member of the newly formed "K" Squad, a special undercover unit that dealt primarily with the fields of vice and narcotics. He served in the "K" Squad for 7 1/2 years, during which time his conduct and disciplinary record was never called into question. In June 1979, Shoemaker was notified he was being reassigned to uniform duty.

On August 8, 1979, Shoemaker filed a complaint in equity with the Court of Common Pleas of Lackawanna County seeking reinstatement to the "K" Squad. Prior to the hearing he withdrew the action pursuant to an agreement with Scranton to submit the dispute to the American Arbitration Association (AAA). The arbitrator found that Scranton had violated its collective bargaining agreement with the Fraternal Order of Police (FOP) dated December 20, 1971.[1] The arbitrator ordered Shoemaker's restoration to the "K" Squad.

On January 30, 1980, Shoemaker petitioned the lower court to confirm the arbitration award pursuant to Section 9 of the Act of April 25, 1927, P.L. 381, *as amended,* 5 P.S. §169 (Arbitration Act). Scranton filed an appeal and application for review with the lower court on January 31, 1980. The cases were consolidated and argued in April 1980. On April 25, 1980, the lower court en banc denied Scranton's appeal and application for review and sustained Shoe-

---

[1] Although Shoemaker was a member of the FOP, E. B. Jermyn Lodge No. 2, the FOP refused to participate in the arbitration proceeding on the grounds that Shoemaker had not followed the grievance procedure allegedly called for in the FOP's customs and procedures.

maker's motion to confirm the award. Scranton appealed to this Court.

Our scope of review in arbitration cases is narrow. The award of an arbitrator will be sustained "so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960). An award draws its essence from the collective bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention. *Leechburg Area School District v. Dale,* Pa. , 424 A.2d 1309 (1981); *Community College of Beaver County v. Society of Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977) and *Brownsville Area School District v. Brownsville Education Association,* 26 Pa. Commonwealth Ct. 241, 363 A.2d 860 (1976).

## I

Scranton first argues that the award was not drawn from the "essence of the collective bargaining agreement." We disagree.

In examining the collective bargaining agreement (Agreement) between Scranton and the FOP, the arbitrator and the lower court focused on the Seniority Agreement. It reads in pertinent part as follows:

1. The seniority principle shall be applied in the Scranton City Police Department on a departmentwide basis and shall include every position in the Scranton City Police Department with the exception of the following:

A. Traffic Control Repair Sergeant,

B. Traffic Division Sergeant,

C. School Patrolman Supervisor,

D. Chief Clerk to the Superintendent of Police, and

E. Armoror Patrolmen.

2. Bidding for positions shall take place once each year from July 1st to July 31st in every particular year unless a new position is created or a vacancy occurs during the year, at which time, bidding shall take place within the next thirty (30) days after the position is created or the vacancy occurs.

3. A seniority principle shall be applied departmentwide within each rank. An officer who does not have the rank commensurate with the rank or vacancy of the new position shall not be permitted to bid for the particular job with the said rank classification, notwithstanding his length of service on the Police Department.

4. The Police officer shall be permitted a testing period of thirty (30) days in which to qualify for the position which he seeks by bidding. Nothing herein shall prevent the City from re-assigning an individual if the City believes that the individual is not qualified to perform the work for the particular position. Any such action by the City will always be subject to the grievance and arbitration procedure as defined in the arbitration award for 1972.

5. The City shall make all attempts to have no special duty appointments. However, if a situation arises which will require a special duty appointment, the appointment shall last for only thirty (30) days, and there shall be no re-appointment of the same person to this position, of another person to this position or of this person to another position. If such action is required by the City, a new position

shall be created and the bidding process shall apply thereto.

At the hearing, Scranton argued that the terms "rank" and "position" applied only to jobs certified through the Civil Service Commission and that since assignment to the "K" Squad was not a certified position, Scranton had the right to move officers within the special unit without following the seniority and bidding procedures. The arbitrator concluded, however, that since there were a number of jobs such as assignment to the "K" Squad within the rank of patrolman No. 1, Shoemaker's rank, the assignment of these tasks was governed by seniority. The arbitrator's paramount consideration was the language of paragraph 5. That paragraph limits special appointments to no more than thirty days and if it is necessary to extend a person's appointment, a new position must be created and the bidding process will apply.

In discussing the evidence presented at the hearing, the arbitrator noted that members of the "K" Squad were carried on the Detective Roster under the title "Special Duty," that Scranton had not always strictly adhered to the thirty day limitation, that the "K" Squad had existed for 7 1/2 years, and that at some time during the term of the previous city administration all incumbent members of the "K" Squad had been compelled to bid for their continued membership on the squad. The arbitrator held that given all these facts a position on the "K" Squad was within the term "position" of paragraph 5 of the Seniority Agreement. Our review of the arbitrator's decision convinces us that the arbitrator's award was drawn from the essence of the Agreement.

## II

Scranton argues that its right to effectively appeal its case was prejudiced by a lack of a record of

the arbitrator's hearing. Neither the Arbitration Act nor the AAA Rules,[2] however, require that a record be made. Section 6 of the Arbitration Act, 5 P.S. §166, reads in pertinent part as follows:

> . All testimony shall be taken under oath or affirmation, as is now provided in suits at law, and shall, at the request of either party or the arbitrators, be taken stenographically and made a part of the record.

Rule 21 of the AAA reads as follows:

> 21. Stenographic Record—Any party may request a stenographic record by making arrangements for same through the AAA. If such transcript is agreed by the parties to be, or in appropriate cases determined by the arbitrator to be the official record of the proceeding, it must be made available to the arbitrator, and to the other party for inspection, at a time and place determined by the arbitrator. The total cost of such a record shall be shared equally by those parties that order copies.

In its brief to this Court, Scranton alleged that it wanted to have a record made but all the parties could not agree. We find no requirement that all parties must agree before a record can be made. Since Scranton failed to avail itself of its clear legal right to request a stenographic record of the arbitrator's hearing, Scranton cannot now expect this Court to grant relief because Scranton may have been prejudiced by its own failure to protect itself.[3]

---

[2] American Arbitration Association, The Voluntary Labor Arbitration Rules of the American Arbitration Association (as amended and in effect January 1, 1979).

[3] Although the instant case involves an agreement to submit to arbitration, we note with interest that even in compulsory arbitration cases the Pennsylvania Supreme Court does not require that a stenographic record be made. Pa. R.C.P. No. 1304, adopted

Scranton further argued that the conduct of the arbitrator showed evident partiality and prejudice to Scranton and that the award should be vacated pursuant to Section 10(c) of the Arbitration Act, 5 P.S. §170(c). This section provides in pertinent part as follows:

[T]he court shall make an order vacating the award upon the application of any party to the arbitration:

. . . .

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced.

We agree with the lower court that it is difficult to give consideration to arguments of the arbitrator's misconduct and erroneous evidentiary rulings in the absence of a stenographic record of the hearing. It has been held, however, that a party's continued participation in proceedings where the arbitrator may have acted in an objectionable manner bars a later complaint as to the misconduct of the arbitrator. *Reisman v. Ranoel Realty Co.*, 224 Pa. Superior Ct. 220, 303 A.2d 511 (1973). The Court in *Reisman* relied on Rule 37 (now Rule 33) of the AAA which states,

Any party who proceeds with the arbitration after knowledge that any provision or requirement of these Rules has not been complied

March 16, 1981, affective 60 days thereafter, 11 Pa. B. 1078 (1981) provides in pertinent part as follows:

(c) A stenographic record or a recording of the hearing shall not be made unless a party does so at his own expense. . . .

with and who fails to state his objection thereto in writing, shall be deemed to have waived his right to object.

We find that Scranton by its failure to act has indeed waived its right to object.

## III

Finally, Scranton contends that the lower court should not have sustained the motion to confirm the arbitration award because the motion cannot be filed until the appellate procedure has been exhausted. This argument is clearly without merit.

Section 9 of the Arbitration Act, 5 P.S. §169 provides as follows:

> *Any time within one year after the award is made* any party to the arbitration may apply to the court having jurisdiction for an order confirming the award, and thereupon the court shall grant such an order, unless the award is vacated, modified, or corrected as prescribed in the next two sections. Notice in writing of the application shall be served upon the adverse party or his attorney five days before the hearing thereof. (Emphasis added.)[4]

The law is clear on its face. It merely provides a one year statute of limitations to apply for confirmation of the award. The filing of the motion to confirm the award does not interfere in any manner with the appellate rights of the aggrieved party.

In the instant case, Scranton filed a timely appeal and application for review of the arbitrator's award which was denied. Since there had been a disposition of the appeal, it was proper for the lower court

---

[4] Sections 10 and 11 of the Arbitration Act, 5 P.S. §§170 and 171, specify the grounds upon which a party may petition the court to vacate, modify or correct the award.

150

to confirm Shoemaker's award. Scranton still had the right, which it obviously exercised, to appeal to this Court.

For the reasons given above, we hereby affirm the order of the Court of Common Pleas of Lackawanna County.

ORDER

AND Now, this 4th day of May, 1981, the Orders of the Court of Common Pleas of Lackawanna County dated April 25, 1980, denying the City of Scranton's Appeal and Application for the Review of the Award of Arbitrators and sustaining the Motion to Confirm the Arbitration Award to James Shoemaker are hereby affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.