IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,           :
                    Petitioner       :
                                     :
          v.                         :  No. 518 C.D. 2017
                                     :  Argued:  November 14, 2017
Pennsylvania State Troopers          :
Association (PSTA) (Trooper          :
Craig Acord),                        :
                    Respondent       :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI                    FILED: January 5, 2018


          The Pennsylvania State Police (PSP) petitions for review of an
arbitrator's award directing the PSP to reinstate Trooper Craig Acord (Grievant)
and place him on restricted-duty status for as long as a Protection From Abuse
(PFA) order prohibiting him from carrying a gun remains in effect, with no loss of
seniority and compensation for any losses incurred as a result of his discharge.
Because of the very restrictive scope of review of grievance arbitration awards, we
affirm.

## I.

Following his assignment to the PSP's Troop M, Trevose Station, Grievant became romantically involved with Trooper Rachel Jones (Trooper Jones). However, after their relationship ended in 2014, Trooper Jones filed several complaints against Grievant alleging harassing behavior. As a result, Grievant was issued a Supervisor's Notation instructing him to cease communications with Trooper Jones and was the subject of two internal and Equal Employment Opportunity (EEO) investigations relating to his alleged conduct. Ultimately, Captain Brian Tobin (Captain Tobin), Troop M's Commander, found the allegations "not sustained" and the Department Discipline Office's (Department) EEO officer also found no violations.

In December 2015, alleging the same harassing behavior, Trooper Jones filed for a PFA. As a result, a temporary PFA was then issued against Grievant, which was later made permanent on May 10, 2016. Among other conditions, that permanent PFA restricted Grievant from carrying any firearm until May 2018.

Because Grievant cannot perform his normal duties as a state trooper without carrying a firearm, he was placed on restricted-duty "for the duration of time the order is in effect." (Reproduced Record (R.R.) at 259a.) A third internal investigation was then initiated, which confirmed the issuance of the permanent PFA and its firearms prohibition. On August 9, 2016, Captain Tobin issued a Disciplinary Action Report sustaining the allegation that a permanent PFA was entered against Grievant that included a firearms prohibition.

2

On October 26, 2016, the Department issued a Notice of Disciplinary Penalty (NDP) dismissing Grievant from his employment with the PSP. As pertinent, the NDP provides:

On December 21, 2015, [Trooper Jones] . . . obtained a temporary PFA order against [Grievant] . . . . [who] had been assigned to the Troop M, Trevose Station until November 25, 2015, when he was temporarily transferred to the Dublin Station and was ordered by Captain Brian Tobin to have no contact with Trooper Jones. On May 10, 2016, the Honorable Judge James M. McMaster, issued a permanent PFA order against [Grievant] at the conclusion of the applicable hearing. Judge McMaster ruled that [Grievant] knowingly engaged in a course of conduct or repeatedly committed acts toward another person (Trooper Jones) . . . without proper authority, under circumstances which placed the person in reasonable fear of bodily harm. In making his determination, Judge McMaster cited in part the following facts:

• Despite Trooper Jones' clear instructions and desires to limit her contact with [Grievant] to professional situations, [Grievant] went out of his way to create or maintain or renew a romantic relationship.

• [Grievant] told Trooper Jones, "You will always be mine" and then kissed her on the neck on or about May 9, 2015, at the Trevose Station.

• [Grievant] attempted to photograph Trooper Jones bent over at the Trevose Station on or about June 10, 2015, and had no credible explanation for doing so.

• [Grievant] was parked in the 7-Eleven parking lot near Trooper Jones' residence on or about November 17, 2015, with the sole intent of monitoring Trooper Jones' activities.

3

- After being transferred to the Dublin Station, [Grievant] returned to the Trevose Station probably knowing Trooper Jones would find out and that such actions would cause her fear.

The PFA is in effect until May 9, 2018. The order prohibits [Grievant] from . . . possessing, transferring, or acquiring any firearm. The firearm prohibition prevents [Grievant's] unrestricted performance of basic police duties for the duration of the order.

3. [Grievant's] conduct and behavior in this matter are in violation of the following State Police Field Regulations:

| **SECTION** | **TITLE** |
| --- | --- |
| FR 1-1.02 | Unbecoming Conduct |
| FR 1-1.03 | Conformance to Laws |

4. [Grievant] enlisted in the State Police on May 4, 2009. During his career, [Grievant] has not been the subject of disciplinary actions.

(R.R. at 334a-335a.) Significantly, the NDP does not list as a reason that the PSP had just cause for discharging Grievant because he was unable to perform an "essential job function"[1] because he was forbidden to carry a gun.

Grievant timely grieved his discharge and, because the parties were unable to resolve the grievance through the contractual steps, the matter was

---

[1] One of the "Essential Job Functions" of a state trooper is to "Load, unload, aim and fire using each hand from a variety of body positions handguns, shotguns and other agency firearms under conditions of stress that justify the [use] of deadly force and at levels of proficiency prescribed in certification standards." (R.R. at 347a.)

4

referred to arbitration. On January 19, 2017, a hearing was held before an arbitrator on the stipulated issue, "[D]id the Pennsylvania State Police have just cause for the discharge of the Grievant[?] . . . If not what shall the remedy be?" (R.R. at 7a-8a.) According to the arbitrator, during that hearing, "both parties had a full and fair opportunity to present documentary and other evidence, examine and cross-examine witnesses, and offer argument in support of their respective positions. The parties filed post-hearing briefs, and the matter was submitted to the Arbitrator for an expedited Award." (Arbitrator's Award at 2.)

On March 29, 2017, the arbitrator issued an Award and Remedy sustaining Grievant's grievance because the Department did not have "just cause" to discharge him based on two limited reasons listed in the NDP (*i.e.*, Unbecoming Conduct and Conformance to Laws). That Award and Remedy reads, in full:

> The grievance is sustained, primarily because the Department's decision to discharge is based on the underlying incidents of harassing conduct alleged in the PFA that were the subject of the first two internal investigations and found 'not sustained' and that were neither proven at the arbitration hearing nor considered when the Disciplinary Action Report was issued. Accordingly, the Department did not have just cause to discharge [Grievant].
>
> As the remedy, the Department is directed to reinstate [Grievant] to his former position (i.e., restricted duty status during the time the PFA remains in effect) with no loss of seniority. The Department is further directed to make [Grievant] whole for any losses incurred as a result of his discharge, including but not limited to back pay and benefits, less any interim earnings.

5

The Arbitrator shall retain jurisdiction of the case for the sole purpose of resolving any disputes over the implementation of the remedy.

(Arbitrator's Award at 3.)  This appeal followed.[2]

## II.

On appeal, the PSP contends that the arbitrator's award was in excess of his powers and that there were irregularities in the proceedings.  Before we reach the merits, a review of our scope of review for Act 111[3] grievance awards is necessary.

## A.

Section 7(a) of Act 111, 43 P.S. § 217.7(a), provides that the determination of an arbitration board "shall be final on the issue or issues in dispute" and "[n]o appeal therefrom shall be allowed to any court."  In *City of Washington v. Police Department of Washington*, 259 A.2d 437 (Pa. 1969), consistent with other statutes providing that no appeal was allowed, our Supreme Court held that appeals from interest arbitration awards could be taken through the court's common-law writ of certiorari, also known as "narrow" certiorari review.

---

[2] While the award provides that "A full Opinion will issue only upon request of either party[,]" neither party requested a written opinion from the arbitrator prior to this appeal. (Arbitrator's Award at 2.)

[3] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–.10.

> Originally, the [common-law] writ of certiorari was limited to an inspection of the record for jurisdiction below and for correction of errors appearing on the face of the record; neither the opinion of the court below nor the evidence in the case formed any part of the record, and the merits could not be inquired into on certiorari. This became known as "narrow certiorari" and only looked at the fairness of the proceeding, not the outcome. Our Supreme Court later developed a "broad certiorari" in which the appellate court looked beyond the jurisdiction of the court below and regularity of the proceedings to determine, by examining the testimony, whether the findings of the court below were supported by evidence or whether it was guilty of an abuse of discretion or an error of law.

*MEC Pennsylvania Racing v. Pennsylvania State Horse Racing Commission*, 827 A.2d 580, 586 (Pa. Cmwlth. 2003), *as amended* (July 15, 2003).

Act 111, just two sections in length, does not even mention grievance arbitration and, unlike the Public Employe Relations Act (PERA),[4] explicitly requires grievance arbitration. Notwithstanding this fact and that the "essence test" was held to be the appropriate scope of review of grievance arbitrations under PERA, in *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Betancourt)*, 656 A.2d 83 (Pa. 1995), our Supreme Court extended narrow certiorari review to police and firemen grievance arbitrations.

Our Supreme Court has articulated that "narrow" certiorari review encompasses four issues: (1) jurisdiction; (2) the regularity of the proceedings; (3)

---

[4] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301.

excess in exercise of powers; and (4) deprivations of constitutional rights.  *City of Pittsburgh v. Fraternal Order of Police*, 938 A.2d 225, 229 (Pa. 2007).  "Such review embodies a balancing of the legislative policy objective of shielding arbitration awards from judicial modification, with the residual need to avoid giving arbitrators unlimited powers."  *Department of Corrections v. Pennsylvania State Corrections Officers' Association,* 12 A.3d 346, 355 (Pa. 2011) (citing *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 768 A.2d 291, 296 (Pa. 2001)).

With that, we turn to the specific issues raised on appeal.

## B.

The PSP contends that the arbitrator's award was in excess of his powers because he reinstated Grievant back to restricted-duty status even though Grievant is forbidden to carry a gun.  It argues that the CBA only mentions "restricted-duty status" in one context – when an internal investigation is pending and/or prior to the issuance of an NDP.[5]

---

[5] While "operat[ing] a law enforcement vehicle" is an "essential job function" of a state trooper (R.R. at 347a), a state trooper may only be discharged for:

> [10] Loss of Pennsylvania operating privileges for 180 or more days, except for recall or suspension of operating privileges of any person whose incompetency has been established under Title 75 Pa. C.S. § 1519 (Motor Vehicle Code).

(R.R. at 339a.)  When an officer loses operating privileges for less than 180 days, because that state trooper cannot be discharged, he or she would necessarily have to be placed on restricted-duty status.

8

In addressing whether an arbitrator acted in excess of his or her powers, our Supreme Court has stated that "[a]n arbitrator's powers are limited. He or she may not mandate that an illegal act be carried out; he or she may only require a public employer to do that which the employer could do voluntarily." *Betancourt*, 656 A.2d at 89-90. Additionally, "the award must encompass only terms and conditions of employment and may not address issues outside of that realm." *Id.* "An error of law alone will not warrant reversal under the narrow certiorari scope of review." *Id.* When assessing an arbitrator's jurisdiction, we look to whether the arbitrator has the power to decide the issue subject to dispute. *Bensalem Township v. Bensalem Township Police Benevolent Association, Inc.*, 803 A.2d 239 (Pa. Cmwlth. 2002). Arbitrators exceed their jurisdiction when they address questions not submitted to them by the parties. *Id.* at 242.

Regarding the PSP's contention that the arbitrator exceeded his authority, our decision in *Bensalem Township* is instructive. In that case, an arbitrator sustained a grievance filed by a police officer who claimed that the township failed to follow the terms of a CBA regarding the discharge of police officers. The arbitrator not only fashioned an order calling for the officer's reinstatement, but also directed the township to pay the officer back pay for the entire period of his discharge, which was directly at odds with a 12-month back pay limitation in the CBA. On appeal, the township asked this Court to vacate that portion of the award in direct contravention of the CBA because the arbitrator exceeded his authority and/or jurisdiction. We rejected that argument, explaining:

> In this case, even though Arbitrator Kasher required the Township to pay Patrolman Maddocks 21 months of backpay when the contract only allows him to award 12

months backpay, **because that award does not require the Township to perform an illegal act or require the Township to perform an act which it could not do voluntarily, we cannot say, unfortunately, that Arbitrator Kasher exceeded his authority,**

As to whether Arbitrator Kasher acted outside his jurisdiction in awarding Patrolman Maddocks lost wages and benefits equaling approximately 21 months when the contract limits the backpay awards to one year, while we have never squarely addressed this question, we have indicated that under this standard, arbitrators exceed their jurisdiction when they address questions not submitted to them by the parties. **If we were to hold, as the Township suggests, every time an arbitrator's decision was not in accord with the collective bargaining agreement that it would be no different than applying the essence test,** the test applied to all other public and private grievance arbitration awards in Pennsylvania except those grievance arbitration awards in an Act 111 bargaining unit.

Because the jurisdiction of an arbitrator goes to his or her power to decide an issue in dispute rather than his or her fashioning of an award, **we need only decide if Arbitrator Kasher had jurisdiction to address the issue in dispute**. In this case, the issue in dispute submitted to Arbitrator Kasher was whether just cause existed to terminate Patrolman Maddocks, and because neither party alleges that Arbitrator Kasher did not have jurisdiction to determine that issue, we cannot, unfortunately, say that he acted outside of his jurisdiction.

Accordingly, only because we are compelled to do so, we affirm the arbitrator's award.

*Bensalem Township*, 803 A.2d at 242-43 (emphasis added, footnote and citations omitted).

For identical reasons to those stated in *Bensalem Township*, we reject the PSP's contention that the arbitrator's award here exceeded his authority and/or jurisdiction. In this case, the PSP discharged Grievant for two specific reasons: "Unbecoming Conduct" and "Conformance to Laws." (R.R. at 335a.) Because the NDP **did not** discharge Grievant because of his inability to carry a firearm or carry out essential job functions, the limited issue before the arbitrator was whether the aforementioned reasons demonstrate "just cause" for discharge, and "[i]f not[,] what shall the remedy be?" (R.R. at 7a-8a.) Because the award does not require the PSP to perform an illegal act or an act that it could not do voluntarily, the arbitrator did not exceed his authority. Moreover, because the parties stipulated that the arbitrator had jurisdiction to decide whether there was just cause to discharge Grievant and to decide the remedy, the arbitrator clearly acted within his jurisdiction.

## C.

The PSP also contends that the arbitrator exceeded his authority by purportedly requiring the re-litigation of an issue previously adjudicated in the PFA hearing, which should have been precluded under the doctrine of *res judicata* and/or collateral estoppel. Pursuant to the NDP, the PSP discharged Grievant for "Unbecoming Conduct" (FR 1-1.02) and "Conformance to Laws" (FR 1-1.03). Those sections of the CBA state:

> [1] Engaging in any action that constitutes **the commission of a felony or a misdemeanor which carries a potential sentence of more than one (1) year, or in any action that constitutes the commission of an equivalent offense in another jurisdiction, state, or territory.** Neither a criminal conviction nor the

11

pendency of criminal charges is necessary for disciplinary action in such circumstances. In addition, a declination of prosecution shall not preclude disciplinary action.

[2] Engaging in domestic violence involving **physical abuse of any victim**; or engaging in activity which would cause a reasonable person to be in fear of bodily injury to **the extent the member's conduct falls under subsection [1] above.**

[3] **Any use of a firearm to threaten another** except as appropriate in the scope of employment (whether or not a specific, officially assigned, duty) or in the defense of self or others. This includes the use of a loaded or unloaded firearm to threaten another, regardless whether as a joke or in horseplay.

(Appendix F of the CBA, R.R. at 226a) (emphasis added).

However, even accepting the contention that the arbitrator was bound to the findings in the PFA order and ignoring the arbitrator's statement that "[t]he fact of the PFA is obviously binding, and it's already been established and it's in the record[,]"[6] the PSP still failed to establish that Grievant committed either of the violations with which he was charged. Nothing in the PFA proceeding establishes "physical abuse" or "the commission of a felony or a misdemeanor which carries a potential sentence of more than one (1) year . . ." or the "use of a firearm to threaten another," which is necessary to make out the provisions with which he was charged.[7] Because the offenses with which he was charged have not been

---

[6] See R.R. at 30a-31a and Arbitrator's Award at 3.

[7] The transcript for the PFA order provides:
**(Footnote continued on next page…)**

12

THE COURT: All right. The statute involved, and I'm going to read this one provision, defines abuse a number of ways, one of which is knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

Both parties -- or both sides agree that that's the only provision the definition of abuse that's applicable here, so that's the [] only provision that I took into consideration.

I'm aware of the impact that this decision will have on the parties. My job under the law is to apply the law to the facts that I find so I'm going to discuss some of the facts that I find, and these are not all of the facts, but the principal facts that I find in rendering my decision.

It's clear that the plaintiff tried to remain on professional, friendly terms with the defendant while always conveying that the relationship -- the romantic relationship they had was over and would not resume.

The defendant clearly ignored her position and grasped for reasons to give himself hope for a renewed romantic relationship.

The defendant clearly persisted despite knowing that plaintiff had moved on and did not want further romantic contact. I find that the defendant did, in fact, tell her something to the order of, You will always be mine and kissed her on the neck on or about May 9th of 2015 at the State Police barracks.

I find that the defendant clearly tried to take a picture of her -- of the plaintiff bent over on or about June 10th and his explanation as to what he was doing is simply not credible.

I find that his parking in the 7-Eleven parking lot on or around November 17th was solely to try to be in a location where he could see her or check on her activities, and to the extent that that was his

**(Footnote continued on next page…)**

13

made out, the arbitrator properly found that the PSP did not establish "just cause" for Grievant's discharge.

## D.

Finally, the PSP contends that there was an "irregularity" in the proceeding because the arbitrator considered the disposition of prior internal

---

**(continued…)**

> regular route, he took that route in the past or did so because he -- it took him near her residence and near the gym she used.
>
> I find that despite her clear instructions and desires to limit their contact to professional situations, the defendant went out of his way to create or maintain or renew a romantic relationship.
>
> I find in considering all of his actions over the period from July of 2014 to December of 2015, the plaintiff was in reasonable fear for her safety and reasonable fear of bodily harm. Even though the defendant's use of the Chat System and going back to Trevose after he was transferred to Dublin may not have been intended to add to her fear, he clearly did it and he should have known and probably did know that she would find out about that and be fearful because of it.
>
> Mr. Acord, I know that you are going to blame me or Ms. Jones for what's happening, but you have nobody but yourself to blame. She and the Pennsylvania State Police gave you every chance to stop and you just wouldn't, so whatever the consequences of the Order that I'm entering, I am entering an Order for a two-year period of time. I have written the Order on the form and my staff will pass that out -- make copies of it and pass it out.
>
> You have nobody to blame but yourself, sir.

(R.R. at 294a-297a.)

14

investigations when issuing the award even though during that hearing, the arbitrator purportedly ruled that the outcome of those investigations could not be used as evidence that the allegations against Grievant were untrue.

The requirement under the narrow certiorari test that there must be "regularity of the proceedings" embodies three areas: "(1) whether there actually were proceedings, (2) whether the parties had notice of the proceedings, and (3) **whether the process of the entity or individual conducting the proceedings was regular** . . . ." *City of Wilkes-Barre v. Wilkes-Barre Fire Fighters Association Local 104*, 992 A.2d 246, 251-52 (Pa. Cmwlth. 2010) (emphasis added). In reviewing an arbitration award for such irregularities, courts are "limited only to a review of the record presented to it." *Borough of Montoursville v. Montoursville Police Bargaining Unit*, 958 A.2d 1084, 1089-90 (Pa. Cmwlth. 2008) (quoting *West Pottsgrove Township v. West Pottsgrove Police Officers' Association*, 791 A.2d 452, 458 (Pa. Cmwlth. 2002)).

Likely due to the phrase's self-defining nature, there is a paucity of cases actually addressing what makes a proceeding and/or process "regular" or "irregular" for purpose of narrow certiorari review.[8] Whether or not that

---

[8] While there is ample case law defining the word "irregularity" in the context of common law arbitration cases under 42 Pa.C.S. § 7341, the scope or review of such cases is different than narrow certiorari review. Under common law arbitrations:

> The award of an arbitrator in a nonjudicial arbitration . . . is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that **fraud, misconduct, corruption or other irregularity** caused the rendition of an unjust, inequitable or unconscionable award.

**(Footnote continued on next page…)**

15

proceeding and/or process is "regular" largely turns on if the decision was issued in accordance with prescribed practice.

There is no dispute that the parties had notice and that during the proceeding "both parties had a full and fair opportunity to present documentary and other evidence, examine and cross-examine witnesses, and offer argument in support of their respective positions. The parties filed post-hearing briefs, and the

---

**(continued…)**

*Id.* (emphasis added). "**In this context**, irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself." *Gargano v. Terminix International Co.*, *L.P.*, 784 A.2d 188, 193 (Pa. Super. 2001) (emphasis added). As we have explained, however, "[n]arrow certiorari review, unlike the scope of review applicable in common law arbitration, does not specifically encompass fraud as an area for review." *City of Wilkes-Barre*, 992 A.2d at 254. The same can be said of misconduct and corruption. The only full definition of that term we can find is in a book published in 1828, no less, stating:

> An irregularity [of the proceedings] may be defined to be, the want of adherence to some prescribed rule or mode of proceeding; and it consists, either in omitting to do something that is necessary for the due and orderly conducting of a suit, or doing it in an unseasonable time, or improper manner. Thus, the want of notice is an irregularity, whether it be to process, upon a declaration, or of trial or inquiry: so, if the notice be not given in due time, or a proper manner. In general, an irregularity is either in mesne process, or the proceedings thereon before judgment, or in the judgment, or execution. If there be any irregularity in the process, or notice to appear thereto, or in the delivery, filing or notice of declaration, or notice of trial or inquiry, the defendant, we have seen, may move the court to set aside the proceedings . . . .

Francis J. Troubat and William Tidd, *The Practice of the Courts of King's Bench and Common Pleas in Personal Actions and Ejectment: To Which Are Added the Law and Practice of Extents and the Rules of Court and Modern Decisions in the Exchequer of Pleas* at 561 (1828) (emphasis added).

matter was submitted to the Arbitrator for an expedited Award." (Arbitrator's Award at 2.) Just because a party does not agree with an arbitrator's evidentiary rulings does not make the process irregular, even if the arbitrator's rulings were inconsistent or just plain wrong.

In any event, the arbitrator's evidentiary rulings were proper. As the arbitrator explained at the hearing:

> I have explained in our off-the-record conversation that if either side in relying on the underlying allegations to either say they're true, or they're not true based on, you know, a court hearing or based on an internal investigation --- neither is binding on me. The findings of the internal aren't binding on me. The findings of the court hearing aren't binding on me except for the fact that there is a ---. **The fact of the PFA is obviously binding, and it's already been established and it's in the record.**
>
> So I'm not --- unless there's going to be . . . firsthand testimony about the allegations themselves, that can come in. The prior investigation can come in as background, but **they're not going to prove, in this proceeding that the allegations are true**.

(R.R. at 30a-31a) (emphasis added). Because the PSP had the burden of demonstrating "just cause" and the arbitrator explained that he would not rely on the prior internal reports and investigations for making out that burden, it was not inconsistent for the arbitrator to sustain the grievance "primarily because the Department's decision to discharge is based on underlying incidents of harassing conduct alleged in the PFA that were the subject of the first two internal investigations and found 'not sustained'. . . ." (Arbitrator's Award at 3.)

17

Accordingly, and for the foregoing reasons, we affirm the arbitrator's award sustaining Grievant's grievance.

_____
DAN PELLEGRINI, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pennsylvania State Police, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 518 C.D. 2017 |
| | : | |
| Pennsylvania State Troopers | : | |
| Association (PSTA) (Trooper | : | |
| Craig Acord), | : | |
| Respondent | : | |

## **O R D E R**


AND NOW, this 5<u>th</u> day of <u>January</u>, 2018, it is hereby ordered that the award of the arbitrator dated March 29, 2017, is affirmed.


_____
DAN PELLEGRINI, Senior Judge

Pennsylvania State Police,                    :
                        Petitioner            :
                                              :   No.  518 C.D. 2017
            v.                                :
                                              :   Argued:  November 14, 2017
Pennsylvania State Troopers                   :
Association (PSTA) (Trooper                    :
Craig Acord),                                 :
                        Respondent            :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge


***OPINION NOT REPORTED***

DISSENTING OPINION
BY JUDGE McCULLOUGH                                    FILED:  January 5, 2018


        In this case, a court of common pleas (trial court) entered a Protection From Abuse (PFA) order against Trooper Craig Acord (Grievant), finding that he committed domestic abuse against a fellow trooper.  As a result of the PFA order, Grievant is unable to possess a firearm for two years and, as such, he cannot perform the basic and essential duties for which he was hired to perform as a trooper for the Pennsylvania State Police (PSP).  For three distinct reasons, I respectfully dissent from the thoughtful Majority opinion affirming the decision of an arbitrator who, after the trial court issued the PFA order, determined that the PSP lacked just cause to dismiss Grievant and reinstated him to a position with the PSP.

        First, the underlying conduct that gave rise to the PFA order established that Grievant committed actions that would constitute the crime of stalking, a first-

degree misdemeanor, and under the collective bargaining agreement (CBA), this fact, alone, plainly warrants his dismissal for just cause. *See* sections 1104(1) and 2709.1 of the Crimes Code, 18 Pa.C.S. §§1104(a), 2709.1; Reproduced Record (R.R.) at 183a, 226a. Although "a mere error of law will not support a finding that the arbitrator exceeded [his] powers," *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 768 A.2d 291, 296-97 (Pa. 2001), here the arbitrator ignored and/or failed to give effect to the findings of fact and conclusions of law that were previously issued by the trial court in the PFA proceedings. In my view, the arbitrator's disregard of the PFA order and decision, based upon his erroneous belief that it is not "binding," (R.R. at 30a-31a), goes well beyond a simple error in interpreting or applying the law, and evidences instead an abuse of the arbitrator's power and authority. *Cf. Aircraft Braking Systems Corp. v. Local 856, International Union*, 97 F.3d 155, 159 & 161-62 (6th Cir. 1996) (discussing collateral estoppel in the context of arbitration proceedings and noting that the federal circuit court of appeals "have held uniformly that arbitrators are bound by prior federal court decisions under the doctrines of collateral estoppel and/or res judicata."). Therefore, per the PFA order, the PSP had just cause to dismiss Grievant, and, as such, the arbitrator's decision to the contrary should be reversed.

Second, and in the alternative, the arbitrator created a procedural irregularity in the form of an evidentiary ruling that he had made, only to later violate that very ruling to the detriment of the PSP. With respect to the internal investigations that the PSP conducted into Grievant's behavior, which determined that the allegations were "not sustained," the arbitrator informed the parties at the hearing: "The prior investigations can come in as background, but they're not going to prove, in this proceeding, that the allegations are untrue." (R.R. at 31a.) Yet, in

his decision, the arbitrator sustained the grievance "primarily because the [PSP's] decision to discharge [Grievant] is based on the underlying incidents of harassing conduct alleged in the PFA that were the subject of the first two internal investigations and found 'not sustained' . . . ." (Decision at 3.) As represented in the PSP's brief, had the PSP known that the arbitrator would base his decision on reasoning that directly contravenes his earlier evidentiary ruling, the PSP would have presented evidence regarding the investigations and their inconclusive nature. (PSP's brief at 23.) Because the arbitrator employed a process that was fundamentally unfair in reaching the result of the grievance, I would conclude that the arbitrator created a "procedural irregularity" worthy of setting aside the decision and award in favor of Grievant. *See also City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259, 1269 (Pa. 2009) (vacating an arbitrator's decision when the arbitrator issued a ruling that constructively precluded a party from presenting its case-in-chief).

Third, pertaining to the remedy fashioned by the arbitrator, as the PSP argues, the arbitrator effectively rewrote the CBA between the PSP and the Pennsylvania State Troopers Association (PSTA), which states that the "arbitrator shall neither add to, subtract from, nor modify the provisions of this Agreement." (R.R. at 183a.) Pursuant to the terms of the CBA and the uncontroverted evidence at the hearing, a limited duty position is only available to a trooper of the PSTA when the trooper sustains an illness or injury, and a restricted duty position is only available during the time in which a trooper is under internal investigation. (R.R at 98a-99a, 113a-16a,174a, 201a-02a; *see also* R.R. at 190a-96a.) This is what the parties had bargained for when they signed the CBA, and it is undisputed that none of these circumstances existed at the time the PSP discharged Grievant. Otherwise,

PAM - 3

had the arbitrator reinstated Grievant to his normal position of trooper, the arbitrator would arguably be ordering the commission of an illegal act, due to the fact that the use of a firearm is a core and indispensable duty of a trooper, and Grievant cannot possess a firearm given the PFA order. (R.R. at 374a.) *Cf. State Correctional Institution at Forest v. Pennsylvania State Corrections Officers Association,* __ A.3d __, __ (Pa. Cmwlth., No. 265 C.D. 2017, filed November 17, 2017), slip op. at 8-10 ("The Arbitrator's direction that, upon reinstatement, Grievant should not supervise inmates is at odds with the statutory definition of a corrections officer . . . . [T]he Arbitrator's award essentially modified the Department's managerial right by restricting it from placing Grievant in a supervisory role."). In other words, in these circumstances, the arbitrator would unnecessarily place Grievant in a dangerous situation where he would be unable to defend himself, or the public, by utilizing a firearm.

In essence, the arbitrator here engaged in "interest arbitration," and transcended his power and authority by bypassing the negotiation process on a mandatory subject of collective bargaining, *see City of Allentown v. International Association of Fire Fighters Local 302*, 157 A.3d 899, 911-14 (Pa. 2017), and devising a brand new position – and potentially class of employees – within the PSP in order to find Grievant employment. *See also City of Pittsburgh v. Fraternal Order of Police Fort Pitt Lodge No. 1*, 111 A.3d 794, 802 (Pa. Cmwlth. 2015) (en banc) ("In sum, the arbitrator had jurisdiction to decide a grievance that the wages paid to on-duty police officers violated the CBA. However, in fashioning this award, he acted as an interest arbitrator, which exceeded his jurisdiction and authority in a grievance arbitration."). Consequently, I would conclude that this error, too, justifies vacating the arbitrator's award.

For these reasons, I must respectfully dissent.

_____
PATRICIA A. McCULLOUGH, Judge