# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh                 :
:
           v.                   :
:
Fraternal Order of Police,       :
Fort Pitt Lodge No. 1         :
(Keith Edmonds),           :   No. 1294 C.D. 2024
                Appellant       :   Argued: May 7, 2025

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
JUDGE COVEY                           FILED: August 8, 2025

The Fraternal Order of Police, Fort Pitt Lodge No. 1 (FOP) appeals from the Allegheny County Common Pleas Court's (trial court) September 25, 2024 order granting the City of Pittsburgh's (City) Statutory Appeal to Vacate Arbitration Award, and vacating the arbitration award (Award) reinstating City Police Officer Keith Edmonds (Grievant) pursuant to what is referred to as the Policemen and Firemen Collective Bargaining Act, commonly known as Act 111.[1] The FOP

---

[1] Act of June 24, 1968, P.L. 237, No. 111, *as amended*, 43 P.S. §§ 217.1-217.12. Section 1 of Act 111 provides:

> Police or firemen employed by a political subdivision of the Commonwealth or by the Commonwealth shall . . . have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions[,] and other

presents five issues for this Court's review: (1) whether the trial court erred by determining that the Award exceeded the Arbitrators' jurisdiction or powers and violated the City's due process rights or contract rights under *narrow certiorari*; (2) whether the Award was a product of the Arbitrators' *honest*, thorough, and well-supported fact-finding and the parties' collective bargaining agreement (CBA) interpretation, and, as such, was entitled to extreme deference; (3) whether the trial court erred because the City's arguments regarding a *dishonest fact-finding* demonstrating a due process violation were related to the panel's *dishonest application of the CBA*, not by utilizing the substantial evidence standard of the Policemen's Civil Service Act for Cities of the Second Class (PCSA)[2] referenced in Section 4(B) of the CBA; (4) whether the trial court erred by vacating the Award on the basis that the Arbitrators exceeded their authority by determining that the City had not adequately trained Grievant, when there was neither evidence of inadequate training nor any such argument made by the FOP or the City; and (5) whether the trial court erred by vacating the Award on the basis that the Arbitrators deprived the City of its due process rights by refusing to allow Grievant to be cross-examined on his taser training, as evidentiary admission and exclusion is within the Arbitrators' power and discretion. After exhaustive review, this Court reverses.

---

benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of [Act 111].

43 P.S. § 217.1.

[2] Act of March 20, 1990, P.L. 78, *as amended*, 53 P.S. § 23539.1(a) ("No employe . . . in the bureau of police, . . . shall be removed, discharged, suspended, demoted[,] or placed on probation, except for just cause which shall not be religious or political.").

## Background

On October 13, 2021, a City resident in the Bloomfield neighborhood (caller) called 911 to report a suspicious black male who she believed was stealing a bicycle from outside her neighbor's house. The caller reported that the suspicious person was wearing a black tee shirt with writing on the back, a blue hat, and gray sweatpants. At 10:29 a.m., Grievant arrived at the scene and saw James Rogers (Rogers), who met the caller's description of the suspicious person. Grievant approached Rogers when Rogers was standing by a group of trash cans and did not have a bicycle with him. When Rogers noticed Grievant approaching, Rogers put his hands in the air and faced away from Grievant. Grievant began to rapidly ask Rogers a series of questions about the bicycle, giving little time for Rogers to answer and telling him to be quiet when he did attempt to answer. After these questions, Grievant asked Rogers if he had identification. Although Rogers verbally said no, he began to reach for his pocket. When Rogers reached for his pocket, Grievant told him to put his hands up and if Rogers reached for his pocket again, Grievant would take Rogers to the ground. At this point, Grievant conducted a pat-down search of Rogers with no backup present. During the pat-down, Grievant reached into Rogers' front pants pocket and removed his wallet. Rogers grabbed the wallet from Grievant's hand, at which point Grievant used a leg sweep to get Rogers on the ground. Once Rogers was on the ground, Grievant called for backup.

While Rogers was on the ground, Grievant instructed Rogers to place his hands behind his back. When Rogers did not comply, Grievant put his taser on Rogers' back. Over the next few minutes, Grievant tased Rogers a total of 10 times.[3] Once City Police Officers Patrick Desaro and Gregory Boss (collectively, Officers)

---

[3] The taser did not activate every time Grievant triggered it. Grievant claimed it only activated two times.

3

arrived as backup, they placed Rogers in handcuffs and pushed him into the back of a police car. Multiple times during the encounter, Rogers asked to be taken to the hospital. Lieutenant Matthew Gauntner (Lt. Gauntner) arrived on the scene and asked if Grievant needed to see a medic. Grievant answered that he did not, but said that Rogers needed to be seen by a doctor. Grievant told Lt. Gauntner that he hit Rogers twice, referring to the use of his taser. Rogers remained in the back of the police car on the scene for 20 minutes before he was transported to the hospital. Rogers was unresponsive when he arrived at the hospital and Grievant and others attempted to revive him with chest compressions. Rogers, 54 years old, died the next day.

**Facts**

On December 22, 2021, the City filed a Disciplinary Action Report against Grievant alleging violations of the following City Bureau of Police (PBP) Rules and Regulations:

-12-06 Use of Force 3.0 De-Escalation

-12-06 Use of Force 8.1 Use of Non-Deadly Force

-12-06 Use of Force 8.2 Use of Non-Deadly Force

-12-09 Pepper Aerosol Resistant Spray 4.0 OC Usage Criteria

-16-01 Standards of Conduct 3.13 Neglect of Duty

-45-02 Warrantless Searches and Seizures 5.0 Procedure for Conducting Pat-Down Searches (*Terry* Stop)[4]

---

[4] In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court approved *stop and frisk* practices as a limited departure from the probable cause requirement and the necessity of warrants for searches and seizures.

-50-01 Handling of Prisoners 9.0 Transporting Sick, Injured, or Disabled Prisoners

On January 25, 2022, City Chief of Police Scott Schubert (Chief Schubert) recommended that Grievant be disciplined with a five-day suspension pending employment termination. On February 15, 2022, Public Safety Director Lee Schmidt agreed with Chief Schubert's recommendation. The FOP appealed from the City's recommended disciplinary action on February 17, 2022. The City held a grievance hearing on February 24, 2022. On March 24, 2022, the City terminated Grievant's employment.

The City and the FOP, having failed to resolve the dispute involving Grievant's employment termination, proceeded to final and binding arbitration pursuant to Sections 19.1.7 and 19.1.8 of the CBA. A Panel of Arbitrators (Arbitrators) held hearings on September 15 and November 8, 2023, respectively. Both parties were given the full opportunity to present evidence, cross-examine witnesses, and argue their respective positions. The parties filed post-hearing briefs electronically on February 16, 2024, that Neutral Arbitrator, Marc Winters (Arbitrator Winters), electronically exchanged with the parties that same day. The Arbitrators met in an Executive Session, via Zoom, on February 29, 2024. On March 8, 2024, Arbitrator Winters issued the Award reinstating Grievant.[5] The City appealed from the Award to the trial court. On September 25, 2024, the trial court vacated the Award. The FOP appealed to this Court.

## Discussion

Initially, the Pennsylvania Supreme Court has explained:

Grievance arbitration is not specifically mentioned in Act 111[,] as its language speaks only to the resolution of disputes arising from "the collective bargaining process,"

___

[5] Arbitrator Juan M. Rivera, Esquire wrote a Dissent. *See* Reproduced Record Vol. I at 8a.

i.e.[,] interest arbitration, which must be settled before a board of arbitration composed of three persons. 43 P.S. § 217.4(b). However, Section 1 of Act 111 states that police and firefighters "shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of [Act 111]," 43 P.S. § 217.1, and in *Chirico v. [Board] of [Supervisors] for Newton [Township]*, . . . 470 A.2d 470, 474-75 ([Pa.] 1983), [our Supreme Court] held that the General Assembly intended for Act 111 and the concomitant body of case law regarding the appellate scope of review to apply to grievance disputes. Therefore, an arbitrator's decision in an Act 111 case, whether grievance or interest, "shall be final on the issue or issues in dispute and shall be binding upon the public employer . . . . No appeal therefrom shall be allowed to any court." 43 P.S. § 217.7(a).

Despite Act 111's preclusion of appeals, [the Pennsylvania Supreme Court] adopted the *narrow certiorari* mechanism for a combination of pragmatic, historical, and constitutional reasons.

*N. Berks Reg'l Police Comm'n v. Berks Cnty. Fraternal Ord. of Police, Lodge #71*, 230 A.3d 1022, 1033 (Pa. 2020) (italics added; footnote omitted).

Accordingly,

"[j]udicial review of any Act 111 arbitration award, whether an interest or grievance award, is limited to *narrow certiorari*." *City of Pittsburgh v. Fraternal Ord. of Police, Fort Pitt Lodge No. 1*, 111 A.3d 794, 800 (Pa. Cmwlth. 2015). This means that a court may consider only four issues relating to an Act 111 award: (1) the arbitrator's jurisdiction; (2) the regularity of the proceedings; (3) whether the arbitrator exceeded his or her powers; and (4) whether there was a deprivation of constitutional rights. *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, . . . 656 A.2d 83, 90 ([Pa.] 1995). **If an arbitration award cannot be vacated on one of these bases**, **then it must be upheld**. *Id*. A mere error of law is insufficient to support the reversal of an Act 111 award. *In re Appeal of Upper Providence Police Del. Cnty. Lodge #27 Fraternal Ord. of Police*, 526 A.2d 315, 322 ([Pa.] 1987).

6

*City of Pittsburgh v. Fraternal Ord. of Police, Fort Pitt Lodge No. 1 (Dailey)*, 334
A.3d 16, 24-25 (Pa. Cmwlth. 2025) (italics and bold emphasis added).

> **The standard by which [this Court] review[s] an
> arbitrator's determination of these issues depends on
> the nature of the issue in the case**. [*Pa.*] *State Police v.*
> [*Pa.*] *State Troopers Ass*[*'n*], 840 A.2d 1059 (Pa. Cmwlth.
> 2004)[.] . . . Where resolution of the issue turns on a pure
> question of law, or the application of law to undisputed
> facts, our review is plenary. [*Town of McCandless v.*
> *McCandless Police Officers Ass'n*, 901 A.2d 991 (Pa.
> 2006)]. However, **where it depends upon fact-finding
> or upon interpretation of the collective bargaining
> agreement**, [**this Court**] **appl[ies] the extreme standard
> of deference applicable to Act 111 awards**; that is, [**this
> Court**] [**is**] **bound by the arbitrator's determination of
> these matters even though we may find it to be
> incorrect**. *City of Phila*[.] *v. Fraternal Ord*[.] *of Police*
> *Lodge No. 5*, 932 A.2d 274 (Pa. Cmwlth. [2007]), [*aff'd*,
> 985 A.2d 1259 ([Pa.] 2009)]; [*Pa.*] *State Police*.

*Borough of Montoursville v. Montoursville Police Bargaining Unit*, 958 A.2d 1084,
1089 (Pa. Cmwlth. 2008) (emphasis added).

The FOP first contends that the trial court erred by determining that the
Award exceeded the Arbitrators' jurisdiction or powers and violated the City's due
process or contract rights under *narrow certiorari* by rescinding Grievant's
discharge and requiring the City to make Grievant whole due to insufficient evidence
of *just cause*, as interpreted under the CBA. Specifically, the FOP argues that the
trial court erred by ruling that the Award violated the City's due process rights
because, in the trial court's opinion, the Arbitrators should have concluded that
overwhelming evidence supported that Grievant violated PBP policy and training in
a way that demonstrated just cause existed to support his discharge, and, thus,
Arbitrator Winters failed to apply just cause as the parties negotiated in the CBA.
The FOP maintains that the City's proffered issue at arbitration was "whether the
City had just cause within the meaning of Section 4 of the [CBA] and the [PCSA,]

as incorporated by reference in Section 4 [of the CBA,] to terminate [Grievant's employment] for violation of General Orders 12-6, 45-02, 50-01, and 12-9 of the rules and regulations of the [PBP]." Reproduced Record (R.R.) Vol. I at 26a. The FOP asserts that because the FOP did not stipulate to the City's proffered issue, and instead submitted its issue, i.e., "whether the City had just cause to terminate [Grievant's employment,] [a]nd if not, what shall the remedy be[,]" *id*., Arbitrator Winters correctly noted that it was within his purview to define the issue. *See id*. The FOP declares that the Award did not violate the City's due process rights, as the Arbitrators did not invade the City's managerial authority by utilizing the just cause standard to define the issue presented, analyzed the rules and regulations purportedly violated, and mitigated the discipline.

The FOP further claims that the City's appeal cited to the PCSA, arguing that the standard of review thereunder applies and controls in this disciplinary grievance over Act 111. The FOP counters that the City and the trial court are incorrect; while the default provisions for addressing employee discipline protected by a CBA are found in the PCSA, the CBA allows an officer to elect whether to have the just cause dispute addressed via the CBA's grievance procedure that results in Act 111 grievance arbitration, as opposed to a City Civil Service Commission (Civil Service) hearing. The FOP posits that the CBA controls, providing a general *just cause* standard and permitting the grievant to take the matter to arbitration under Act 111 and its applicable case law pursuant to CBA Sections 1, 5, and 19.[6] The FOP insists that because the parties negotiated a different standard in the CBA, the parties are not bound by Civil Service statutes on disciplinary

---

[6] Section 1 of the CBA relates to recognition, i.e., for example, the City recognizes the FOP as the sole and exclusive collective bargaining representative, the FOP recognizes the Mayor as the sole and exclusive bargaining representative of the City, etc. *See* R.R. Vol. II at 622a. Section 5 of the CBA sets forth the grievance procedure. *See* R.R. Vol. II at 626a-627a. Section 19 of the CBA relates to police discipline procedure. *See* R.R. Vol. II at 643a-645a.

matters, nor a *substantial evidence* standard of review. The FOP proclaims that the Arbitrators exercised proper jurisdiction and acted within their power in deciding this dispute by interpreting the express language of the CBA, reviewing the rules and regulations allegedly violated, and finding that the discipline lacked "just cause," placing it properly within the Arbitrators' purview. Thus, the FOP claims that a reviewing court must apply the extreme deference standard applicable to Act 111 awards, which the trial court failed to do.

The City rejoins that the trial court correctly held the Arbitrators denied it due process by failing to apply just cause as agreed upon in the CBA. The City claims that the Arbitrators should have decided just cause with reference to the PCSA, as incorporated into the CBA. The City further retorts that just cause must be merit-related and rationally and logically touch upon competency and ability as interpreted by Pennsylvania courts. Specifically, the City maintains that, as the trial court observed, overwhelming evidence supported just cause for Grievant's employment termination, including but not limited to the Arbitrators' acknowledgement that Grievant did not follow each and every policy, rule, and regulation for which he was charged by the strict-letter or strictest interpretation of those policies, rules, and regulations. Indeed, the City emphasizes, among other things, that the record evidence supported that Grievant's frisk and seizure of Rogers' wallet - the impetus for Grievant's tasing of Rogers - was unconstitutional at its inception.

Section 4 of the CBA provides, in relevant part:

MANAGEMENT

A. The City and the Director of the Department of Public Safety, through the Chief of Police shall have the exclusive right to manage, administer, and supervise the employees including the right to schedule and assign work, transfer, and the sole and exclusive right to

9

determine the size and organization of the Police Bureau including the discretion to determine vacancies and to fill vacancies in accordance with the needs of the Bureau and the public safety as determined by the Chief of Police, Director of the Department of Public Safety, and the Mayor.

B. **The parties recognize that the procedure for** appointments, promotions, and reduction of force, suspensions[,] and **discharges is as provided by the** [**PCSA**] . . . , and the City shall obey the safeguards outlined in Section 21 [of the CBA] in conducting internal investigations.

If the [l]egislature should[] amend or enact statutes that mandate a process for the removal, discharge, suspension, reduction in rank[,] or reduction in pay of employees in the competitive class[,] then the [CBA] will be amended to reflect said changes.

R.R. Vol. II at 655a (emphasis added).

Section 4(a) of the PCSA mandates:

**No employe** in the competitive or non-competitive class **in the bureau of police**, . . . **shall be** removed, **discharged**, suspended, demoted[,] or placed on probation, **except for just cause which shall not be religious or political**. The procedure for an employe to challenge a removal, discharge[,] or suspension[,] or placement on probation is subject to collective bargaining. Collective bargaining concerning the procedure shall commence within [30] days of the effective date of this amendatory [PCSA]. Collective bargaining and, in the event of a collective bargaining impasse, arbitration shall be conducted in accordance with [Act 111,] except that the time to request collective bargaining provided for in [S]ection 3 [of the PCSA] shall not apply if this amendatory [PCSA] takes effect on a date that makes compliance with [S]ection 3 [of the PCSA] impossible.

10

53 P.S. § 23539.1(a) (emphasis added). "While the Local Agency Law[7] governs appeals from disciplinary decisions for civil service employees **not** protected by a CBA, where a civil service employee **is** protected by a CBA, as in this case, the terms of the CBA control." *Dailey*, 334 A.3d at 29 (citation omitted).

Moreover, "[a]n arbitrator exceeds h[is] jurisdiction when []he addresses issues not properly submitted to h[im]." *Borough of State Coll. v. Borough of State Coll. Police Ass'n*, 303 A.3d 248, 257 (Pa. Cmwlth. 2023). "Whether just cause exists is a matter of contractual interpretation." *Id*. Here, the issue as determined by the Arbitrators was "[w]hether the City had just cause to terminate [Grievant's employment]? If not, what shall the remedy be?" R.R. at 3a (Award), 13a (Supporting Opinion). Because Section 4(B) of the CBA provides that the discharge procedure is as stated in the PCSA, and Section 4(a) of the PCSA expressly mandates that no police employee shall be discharged without just cause, the Arbitrators' issue was properly submitted. Further, because the issue of whether Grievant violated the PBP rules and regulations is related to the interpretation of just cause, the Arbitrators were permitted to consider and interpret what actions Grievant took and whether they violated the PBP rules and regulations. Accordingly, the trial

---

[7] Section 754(b) of the Local Agency Law provides:

> In the event a full and complete record of the proceedings before the local agency was made, the court shall hear the appeal without a jury on the record certified by the agency. **After hearing**[,] **the court shall affirm the adjudication unless it shall find** that the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter B of Chapter 5 (relating to practice and procedure of local agencies) have been violated in the proceedings before the agency, or **that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence**. . . .

2 Pa.C.S. § 754(b) (emphasis added).

court erred by determining that the Award exceeded the Arbitrators' jurisdiction or powers and violated the City's due process or contract rights under *narrow certiorari* by rescinding Grievant's discharge and ordering the City to make Grievant whole due to *insufficient evidence* of *just cause*, as interpreted under the CBA.

The FOP next argues that the trial court erred because the Award was a product of the Arbitrators' *honest*, thorough, and well-supported fact-finding (derived from lay and expert witness testimony and documentary review) and CBA interpretation (of just cause for discipline for rule/policy violations), and, as such, it was entitled to extreme deference. Specifically, the FOP contends that the trial court's determination that the Arbitrators' fact-finding was *dishonest* - because evidence of their rule violations was *overwhelming* - requires ill intent on the part of the Arbitrators' majority, which is without legal or factual support in the record, and is not specified with any particularity in the trial court's order itself, and used only to disregard the extreme deference to which the Award is entitled.

The FOP further asserts that the Award and Supporting Opinion explained why the Arbitrators did not find just cause to terminate Grievant's employment for the rules' violations, and the trial court disregarded that the rules were written generally to allow for officer discretion in the circumstances encountered. The FOP proclaims that grievance arbitrators have the authority to review the level of discipline imposed by an employer for work rule violations (should they be proven), unless there is some contractual limitation upon that authority - here, there was none.

The City rejoins that although an arbitrator's fact-finding is generally entitled to deference, even if incorrect, *dishonest* fact-finding is not entitled to deference because it denies a party due process. The City retorts that, here, the trial court properly concluded that the Award was based on dishonest fact-finding. The City emphasizes the trial court's reasoning that because Act 111 arbitrators' fact-

12

finding is given great deference, "it is vital to the due process rights of the parties and the integrity of the process that Act 111 arbitrators engage in honest fact-finding." Trial Ct. Op. at 5. The City maintains that the Arbitrators should not render an arbitration award based upon dishonest fact-finding.

The trial court cited the United States (U.S.) Supreme Court decision in *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001), to support its position that dishonest fact-finding is a basis to vacate an arbitrator's award. The *Garvey* Court explained:

> Judicial review of a labor[]arbitration decision pursuant to such a[ collective bargaining] agreement is very limited. Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' [collective bargaining] agreement. [*United*] *Paperworkers* [*Int'l Union, AFL-CIO*] *v. Misco, Inc.*, 484 U.S. 29, 36 . . . (1987). [The U.S. Supreme Court] recently reiterated that if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *E*[.] *Associated Coal Corp. v.* [*United*] *Mine Workers* [*of Am., Dist. 17*], 531 U.S. 57, 62 . . . (2000) (quoting *Misco, supra*, at 38 . . . .). **It is only when the arbitrator strays from interpretation and application of the agreement and effectively "dispense[s] his own brand of industrial justice" that his decision may be unenforceable**. [*United*] *Steelworkers* [*of Am.*] *v. Enter*[.] *Wheel & Car Corp.*, 363 U.S. 593, 597 . . . (1960). **When an arbitrator resolves disputes regarding the application of a contract**, **and no dishonesty is alleged**, **the arbitrator's "improvident, even silly, fact[-]finding" does not provide a basis for a reviewing court to refuse to enforce the award**. *Misco*, 484 U.S.[] at 39 . . . .

*Garvey*, 532 U.S. at 509 (emphasis added).

13

Here, while it is clear that the trial court did not agree with the Arbitrators' fact-finding, the Arbitrators nonetheless explained their rationale as follows:

> After reviewing the entire record[,] including reports and depositions from all expert witnesses, the majority of the . . . Arbitrators have concluded that although [] Grievant may not have followed each and every policy, rule[,] and regulation for which he was charged by the strict letter or strictest interpretation of that policy, rule[,] or regulation, [] Grievant did not violate them either.
>
> Each policy, rule[,] and regulation cited contains language that would permit [police o]fficers to use their discretion and/or interpretation of the policies, rules[,] and regulations based on the situation occurring in front of the [police o]fficers and/or the totality of the circumstances at hand.
>
> And in certain policies, rules[,] and regulations it was the failure of adequate training for the particular circumstance occurring[,] not [] Grievant's conduct.
>
> [] Grievant's conduct[] on October 13, 2021[,] falls within the framework, intent[,] and interpretation of the polic[i]es, rules[,] and regulations.

R.R. at 5a (Award). While this Court may find the Arbitrators' fact-finding improvident, there is no evidence that it was dishonest. Accordingly, the trial court erred by determining that the Arbitrators engaged in dishonest fact-finding.

The FOP next argues that the trial court erred by not utilizing the PCSA's substantial evidence standard referenced in Section 4(B) of the CBA (rather than the controlling CBA's just cause standard), where reviewing the City's rules and policies falls within the Arbitrators' just cause analysis. Specifically, the FOP contends that the trial court relied upon the City's *dishonest fact-finding* as a due process argument, which was not focused upon any alleged rule violations or upon the Arbitrators' ill motive, but were instead related to the Arbitrators' dishonest

14

application of the CBA, by not using the PCSA's *substantial evidence* standard referenced in Section 4(B) of the CBA (as opposed to the CBA-required standard of just cause the Arbitrators utilized). The FOP contends that the Award did not violate the City's due process rights because the Arbitrators acted within their powers to determine that the rule violations were not proven, and to issue any remedy therefor, including rejecting the City-asserted violations.

The FOP further asserts that while the City may have the managerial right to effectuate workplace rules and regulations under Section 4(A) of the CBA, those rules and regulations must not be inconsistent with the law or the CBA. *See* Section 4(B) of the CBA. The FOP maintains that an arbitrator, as the fact-finder interpreting a CBA, must look to the CBA for an expression or list of conduct that constitutes just cause. The FOP claims that when a public employer has published work rules or regulations that delineate expected conduct of which an employee should have known, those rules or regulations become part of the definition of just cause whether or not they are expressly incorporated into the CBA by reference. The FOP insists that, in this case, the Arbitrators were permitted to review and interpret the City's asserted rules and regulations under *just cause* as if they were expressly written in the CBA; thus, the Arbitrators were within their powers to interpret the City's rules and regulations, determine the violations proven, and issue any remedy therefor, including rejecting some of the City-asserted violations and mitigating discipline.

The trial court opined, in relevant part:

The [A]rbitrators found that [Grievant] did not have to follow "the strict letter or strictest interpretation of City rules and regulations.["] (R.[R. at] 21a.) Section 4[(A)] of the CBA provides that "the City and the Director of Public Safety, through the Chief of Police shall have the exclusive right to manage, administer, and supervise its police officers . . . ." This right is limited only by the

15

provisions of Section 4[(B)] [of the CBA,] which requires that any discipline administered as part of this authority comply with [Section 4(a) of PCSA]. [Grievant's employment] termination was not based on any religious or political reasons, and as described above was based on just cause because of his violation of [PBP] policies and training.

The [A]rbitrators could not permit interpretations of the [PBP] rules and regulations that are inconsistent with the training provided to the police. Therefore, [Grievant's employment] termination was within the exclusive rights to insist that its officers follow policies "by the strict letter or strictest interpretation" of the City . . . .

Trial Ct. Op. at 8.

However, because the issue before the Arbitrators was just cause, and the PBP rules and regulations and Grievant's compliance therewith fall squarely within that issue, it was within the Arbitrators' province, not the City's, to interpret the rules and regulations and Grievant's compliance therewith. Moreover, neither the trial court nor this Court may apply a substantial evidence standard. Rather, as long as an award relies upon fact-finding or upon interpretation of the collective bargaining agreement, this Court applies "the extreme standard of deference applicable to Act 111 awards;" that is, this Court is "bound by the [A]rbitrator[s'] determination of these matters even though [this Court] may find it to be incorrect." *Borough of Montoursville*, 958 A.2d at 1089. Accordingly, the trial court erred by relying upon the City's argument of *dishonest fact-finding* as a due process violation.

The FOP next argues that the trial court erred by vacating the Award on the basis that the Arbitrators exceeded their authority by determining that the City had not adequately trained Grievant, when there was neither evidence of inadequate training nor any such argument made by the FOP or the City. The FOP contends that the FOP and the City raised inadequate training by their witness testimony and exhibits before the Arbitrators, and it is a finding of fact entitled to extreme

16

deference. The FOP emphasizes that if resolution of an issue depends upon the arbitrator's fact-finding or interpretation of the parties' collective bargaining agreement, reviewing courts must apply the extreme deference standard applicable to Act 111 awards; that is, they are bound by the arbitrator's determination of these matters, even though the reviewing court may find them to be incorrect. *See Betancourt*.

The City rejoins that the issue of whether Grievant's training was inadequate never arose during the grievance procedure; rather, it was addressed for the first time after the FOP's alleged expert, James Monkelis (Monkelis), repeated the Critical Incident Review Board's (CIRB) findings during his deposition testimony. Thus, the City insists that it was not given an opportunity to introduce evidence of the complete scope of Grievant's training because the FOP did not assert alleged inadequate training during the steps of the contractual grievance procedure; therefore, the City was denied due process. The City further retorts that, for the same reason, the Arbitrators exceeded their jurisdiction and authority to find that the City did not have just cause to terminate Grievant's employment. The City maintains that the CBA permits only those grievances which have been processed in accordance with the CBA to be appealed to arbitration. The City proclaims that since the alleged inadequate training was not raised in the grievance process, the Arbitrators were not authorized to rely upon that fact-finding to reach their determination.

The trial court opined:

The primary evidence that the FOP offered of "failure to train" was testimony from [] Monkelis , who testified that the officers involved in this incident had a lack of training in recognizing a medical emergency (R.[R. at] 506a, 523a). [] Monkelis supports his opinion about the lack of training by citing to the CIRB report. Although the CIRB report names one of the failures in this incident as the

17

> inability "of the officers on the scene to recognize the signs of medical distress . . . [,]" it does not find that the cause of that inability was a failure of training. (R.[R. at] 726a). Indeed, [Grievant] testified that officers get updated training annually and that each year they "get updates on everything." (R.[R. at] 84a). Therefore, *there is insufficient evidence* to support the position that a lack of training caused [Grievant] to violate the policies that served as the basis for his discharge . . . .

Trial Ct. Op. at 8-9 (emphasis added).

It appears the trial court was again applying a substantial evidence standard that neither it nor this Court are permitted to apply. Rather, as long as the Arbitrators are deciding the issue before it, their fact-finding is entitled to extreme deference. *See Borough of Montoursville.* Accordingly, the trial court erred by vacating the Award on the basis that the Arbitrators exceeded their authority by determining that the City had not adequately trained Grievant.

Finally, the FOP argues that the trial court erred by vacating the Award on the basis that the Arbitrators deprived the City of its due process rights by refusing to allow Grievant to be cross-examined on his taser training, as evidentiary admission and exclusion are within the Arbitrators' power and discretion, which is likewise entitled to extreme deference. The FOP contends that the exclusion of a line of questioning is another fact-finding/evidentiary ruling of the Arbitrators, which is well within the Arbitrators' powers, grounded upon sound reasoning, and thus not a violation of due process. The FOP insists that a due process violation cannot be found in every evidentiary ruling, lest the courts subject every Act 111 arbitrator's decisions and rulings to unfettered judicial review. The FOP maintains that when the FOP filed its grievance contesting a lack of just cause for Grievant's employment termination, any taser violation was outside of its scope of appeal and outside of the Arbitrators' jurisdiction and/or powers to address; thus, it was not a

18

due process violation within *narrow certiorari* on which Arbitrator Winters could make an evidentiary ruling.

The City rejoins that an arbitrator, in conducting a hearing, may not violate due process, which occurs when an arbitrator refuses to hear pertinent and material evidence. The City emphasizes that, in this case, the FOP, without objection, introduced Order 12-13 into the record for the Arbitrators' consideration; however, Arbitrator Winters ruled that the City could not cross-examine Grievant, *inter alia*, to support its neglect of duty charge and to demonstrate that Grievant should not be reinstated. The City insists that the fact that Grievant was not charged with violating Order 12-13 is irrelevant to the question of whether the evidence tended to make the fact of whether Grievant neglected his duty, a fact of consequence, more probable than it would be without the evidence.

The trial court relied upon *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 985 A.2d 1259 (Pa. 2009), to support its position that prohibiting Grievant's cross-examination regarding taser training violated the City's due process rights and therefore justified vacating the Arbitrators' Award. In *Breary*, the Pennsylvania Supreme Court determined that the arbitrator violated the City of Philadelphia's due process rights by precluding it from presenting **any** evidence because it failed to comply with a subpoena. The *Breary* Court held:

> [W]hile [the Pennsylvania Supreme Court] agree[s] with the FOP that **review of a simple "evidentiary question" would run far afield of *narrow certiorari***, the heart of this matter concerns the propriety of an extreme discovery sanction precluding further action in this case, and, therefore, a valid constitutional claim involving the most basic of rights: due process of law. Thus, pursuant to *Betancourt*, [the Pennsylvania Supreme Court] find[s] that [this Court] may examine whether the arbitrator's discovery sanction, which constructively precluded the City [of Philadelphia] from presenting a case-in-chief,

19

violated the City [of Philadelphia]'s right to procedural due process.

*Breary*, 985 A.2d at 1269 (bold emphasis and italics added).

Here, the Arbitrators precluded Grievant's cross-examination on an issue they determined was irrelevant to the just cause issue before them - the specific PBP rules and policies Grievant was charged with violating. As such, it is a "review of a simple 'evidentiary question' [which] run[s] far afield of *narrow certiorari*," *id.*, and not the potential due process violation the *Breary* arbitrator caused by precluding the City of Philadelphia from presenting a case-in-chief. The determination herein was within the Arbitrators' province and outside of the trial court's review. Accordingly, the trial court erred by vacating the Award on the basis that the Arbitrators deprived the City of its due process rights by refusing to allow the City to cross-examine Grievant on his taser training.

**Conclusion**

The U.S. Supreme Court has instructed that if an "'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *Garvey*, 532 U.S. at 509 (quoting *E. Associated Coal Corp.*, 531 U.S. at 62). Further, the *Garvey* Court expounded:

> "'[C]ourts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim.'" [*Misco*, 484 U.S. at 37] (quoting *Steelworkers v. Am*[.] *Mfg. Co.*, 363 U.S. 564 . . . (1960)). When the judiciary does so, "it usurps a function which . . . is entrusted to the arbitration tribunal." *Id.*, at 569[.] . . . ; *see also Enter*[.] *Wheel & Car Corp.*, [363 U.S. at] 599 ("It is the arbitrator's construction [of the agreement] which was bargained for . . . .").

20

*Garvey*, 532 U.S. at 509-10.  Accordingly, notwithstanding that this Court finds the Award repugnant, because the Arbitrators arguably construed or applied the CBA and acted within the scope of their authority, *see Garvey*, this Court must reverse the trial court's order.

For all of the above reasons, the trial court's order is reversed.


_____
ANNE E. COVEY, Judge

Judge Wallace concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh               :
:
          v.                      :
:
Fraternal Order of Police,     :
Fort Pitt Lodge No. 1       :
(Keith Edmonds),          :   No. 1294 C.D. 2024
            Appellant     :

## O R D E R

AND NOW, this 8th day of August, 2025, the Allegheny County Common Pleas Court's September 25, 2024 order is reversed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh             :
                                        :
        v.                     :
                                          :
Fraternal Order of Police,    :
Fort Pitt Lodge No. 1        :
(Keith Edmonds),          :   No. 1294 C.D. 2024
             Appellant     :   Argued: May 7, 2025


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE STACY WALLACE, Judge
               HONORABLE MATTHEW S. WOLF, Judge

CONCURRING OPINION BY
JUDGE WOLF                                FILED:  August 8, 2025

      I agree with the well-reasoned and objectively grounded Majority opinion of the Court. I only take exception to the Majority's disparaging parting shot at the underlying arbitration award that this Court upholds. Calling the award "repugnant"[1] is neither necessary for the disposition of this matter, nor appropriate, and perpetuates the type of disparaging name calling that took place between the arbitration panel below. *See* Reproduced Record at 8a. Because I believe such personal judicial expression has no place in this matter, I respectfully concur.

                                                     MATTHEW S. WOLF, Judge

---

[1] *See City of Pitt. v. Fraternal Order of Police, Fort Pitt Lodge No. 1*, __ A.3d __ (Pa. Cmwlth., No. 1294 C.D. 2024, filed August 8, 2025, slip op. at 20.